**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0075-22

MARNA LYNN,

    Plaintiff-Respondent,

v.

MARK MEDING,

    Defendant-Appellant,

_____

           Submitted December 12, 2023 – Decided July 22, 2024

           Before Judges Sumners and Smith.

           On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-0527-19.

           Ronda Casson Cotroneo, attorney for appellant.

           Cockerill, Craig & Moore, LLC, attorneys for respondent (Christine C. Cockerill, on the brief).

PER CURIAM

    Defendant Mark Meding appeals from a trial court order denying his motion to vacate a final judgment of divorce (FJOD) pursuant to Rule 4:50-1.

On appeal, Meding does not identify which section of the rule he relies upon. Nonetheless, he argues the divorce agreement should be vacated because its anti-Lepis[1] clause is unenforceable. He also contends that if the agreement is enforceable, that he has demonstrated changed circumstances warranting a post-judgment modification of his alimony. Finally, he argues the trial court erred by not conducting a plenary hearing before issuing its order denying his application. After a thorough review of the record, we conclude defendant's arguments are meritless, and we affirm.

Defendant and plaintiff, Marna Lynn, were married in September 2002. The parties had two children, born in 2004 and 2007. The parties divorced in December 2018. Although he had notice of the hearing, defendant did not attend court on the date the FJOD was entered by the Family Part. Marna Lynn is currently the parent of primary residence. Defendant has remarried.

Both parties worked during the marriage. Plaintiff is a therapist. Between 2010 and 2015, defendant was the director of sales for a corporation with operations in the United States and Canada. In 2015, defendant voluntarily left his sales director position to purchase and run his own business. Defendant

---

[1] Lepis v. Lepis, 83 N.J. 139, 146 (1980).

A-0075-22

purchased this business for $2.2 million, borrowing almost one hundred percent of the purchase funds, including borrowing money from plaintiff's parents.

While the parties negotiated their thirty-one-page marital settlement agreement (MSA), plaintiff was represented by counsel. Defendant was self-represented. The preamble to the MSA stated, in part:

> [E]ach party has had the opportunity to consult with and be independently represented by counsel of their own choosing, the [h]usband having reviewed this Agreement and having the opportunity to consult with counsel and having voluntarily waived his right to counsel recognizing that such waiver is voluntary and cannot be the basis for him to seek modification of this Agreement under any circumstance . . . .

Paragraph seven of the MSA addressed defendant's waiver of his right to counsel:

> 7.1. . . . [t]he [h]usband has been advised of his right to obtain counsel with regard to this proceeding.
>
> 7.2. If the [h]usband executes this Agreement without retaining counsel he does so voluntarily and waives his right to counsel. The [h]usband understands and agrees that he may not later challenge this Agreement because he did not retain counsel.

Other MSA terms included: defendant would pay $2,500 per week in alimony for fifteen years to plaintiff unless she got a partner who paid more than 50% of her living expenses; defendant would pay $2,500 per month and plaintiff

3

would contribute $1,000 per month toward the children's 529 college savings plan; the parties were to split the children's expenses equally; termination of alimony would occur either upon the graduation of both children or on August 16, 2032, whichever is later; and an agreement the MSA was not to be modified. By agreement, the parties did not exchange case information statements. Per the MSA, plaintiff retained the proceeds from the sale of the house, totaling approximately $156,774.76.

The record shows that in 2021 defendant withdrew over $118,000 from the children's 529 college savings plan without plaintiff's consent. Defendant also accumulated $116,000 in alimony arrears in 2021. Defendant did not pay any child support after August 2021. The record further shows defendant's defaults under the agreement coincided with his purchase of a home with his current wife.

In January 2022, defendant moved to declare the MSA unconscionable. He sought several areas of relief including: new determinations on alimony, child support and equitable distribution; disgorgement by plaintiff of $356,686 in alimony; disgorgement by plaintiff of $78,387.38 in proceeds from the sale of the former marital home; vacation of all alimony arrears; and an award of

counsel fees. Plaintiff opposed and cross-moved for enforcement of litigants' rights.

On March 25, 2022, the trial court rendered a detailed oral statement of reasons that defendant: waived his right to counsel; was under no duress when he signed the MSA; and agreed that he would not challenge the MSA later on the basis that he did not have counsel. Finding that defendant had "no basis for this application," the court denied defendant's motion without a plenary hearing on March 25, 2022. The court granted plaintiff's cross-motion and entered judgment against defendant in the amount of $212,750 for alimony arrears. Making the appropriate findings, the court also rejected defendant's fee application, and instead awarded plaintiff $6,100 in counsel fees.

Defendant moved for reconsideration, and plaintiff filed opposition and a cross-motion for counsel fees. On August 5, 2022, the court denied reconsideration and also granted plaintiff's application for additional counsel fees incurred in opposition. Defendant appealed.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). We reverse "only

when a mistake must have been made because the trial court's factual findings are 'so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice . . . .'" Spangenberg v. Kolakowski, 442 N.J. Super. 529, 535 (App. Div. 2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We review de novo questions of law. Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020). An abuse of discretion occurs where the trial court's decision is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." Flagg v. Essex Cnty. Prosecutor, 171 N.J. 561, 571 (2002) (quoting Achacoso-Sanchez v. Immigr. & Naturalization Serv., 779 F.2d 1260, 1265 (7th Cir. 1985)).

Settlement of matrimonial disputes is "encouraged and highly valued in our system." Quinn v. Quinn, 225 N.J. 34, 44 (2016). Settlement agreements, including settlement agreements in matrimonial actions, are governed by basic contract principles and, as such, courts should discern and implement the parties' intent. J.B. v. W.B., 215 N.J. 305, 326 (2013). "The court's role is to consider what is written in the context of the circumstances at the time of drafting and to apply a rational meaning in keeping with the 'expressed general purpose.'" Pacifico v. Pacifico, 190 N.J. 258, 266 (2007) (quoting Atl. N. Airlines, Inc. v.

6

Schwimmer, 12 N.J. 293, 302 (1953)). "[A] court should not rewrite a contract or grant a better deal than that for which the parties expressly bargained." Quinn, 225 N.J. at 45.

"'[S]trong public policy favor[s] stability of arrangements' in matrimonial matters." Konzelman v. Konzelman, 158 N.J. 185, 193 (1999) (quoting Smith v. Smith, 72 N.J. 350, 360 (1977)); see also Quinn, 225 N.J. at 44. However, a court is "authorized to modify alimony and support orders 'as the circumstances of the parties and the nature of the case' require." Halliwell v. Halliwell, 326 N.J. Super. 442, 448, (App. Div. 1999) (quoting N.J.S.A. 2A:34-23). A party seeking a modification of alimony and child support obligations must demonstrate changed circumstances "as would warrant relief." Lepis, 83 N.J. at 157; see also Spangenberg, 442 N.J. Super. at 536.

A temporary change of circumstances does not warrant relief. Lepis, 83 N.J. at 151; see also Donnelly v. Donnelly, 405 N.J. Super. 117, 128 (App. Div. 2009). If the moving party makes a prima facie showing of changed circumstances, the court may order the parties to disclose information regarding their financial status to enable the court to make an informed decision as to "what, in light of all the [circumstances] is equitable and fair." Lepis, 83 N.J. at 158 (quoting Smith, 72 N.J. at 360).

7

We conclude defendant's arguments are wholly without merit and we affirm substantially for the reasons set forth in the trial court's oral opinion denying both the original motion and reconsideration. We make the following brief comments.

In addition to Article VII of the MSA referenced above, we highlight Article VIII. Article VIII of the MSA is entitled, "General Representations." It is a comprehensive eight-page, twenty-nine paragraph section of the MSA. Among other things, defendant agreed and represented in Article VIII that: the agreement was negotiated exclusively between the parties; he waived all right to discovery, including the exchange of Case Information Statements; the parties would not conduct discovery and that he relied on his knowledge of plaintiff's finances; he understood he could not challenge the agreement later based on an absence of discovery; and he waived right to counsel.

We discern nothing in the record which would persuade us to rewrite the MSA or grant defendant a better deal than that for which he expressly bargained. Quinn, 225 N.J. at 45.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0075-22